**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| CAPITAL SENIOR LIVING, INC., ) | Case No. 3:22-CV-00606 |
| ) | |
| Plaintiff, ) | JUDGE JAMES G. CARR |
| v. ) | |
| ) | **PLAINTIFF'S MEMORANDUM IN** |
| HEATHER BARNHISER, *et al*., ) | **SUPPORT OF ITS MOTION TO** |
| ) | **COMPEL DEFENDANTS HEATHER** |
| Defendants. ) | **BARNHISER AND ELLIE SELDERS** |
| ) | **TO PRODUCE MOBILE DEVICES** |

**I.      INTRODUCTION**

Pursuant to Fed. R. Civ. P. 37(a), Plaintiff Capital Senior Living, Inc. ("Capital Senior"), by and through its undersigned counsel, respectfully moves this Court to enter an Order compelling Defendants Heather Barnhiser ("Barnhiser") and Ellie Selders ("Selders") to produce for purpose of forensic imaging and examining any mobile devices owned by or used by them for personal or business purposes during the period of July 1, 2021 through the present (collectively the "Devices").  These Devices contain data and communications that are both highly relevant and reasonably calculated to lead to the discovery of admissible evidence in this action.  This is not speculative.  Barnhiser and Selders admit that they engaged in telephone conversations and text messages related to Capital Senior employees going to work for its direct competitor.  Moreover, Barnhiser has produced some but not all of her text messages related to these communications.  Further, the Devices also contain data related to Barnhiser's and Selders' intentional deletion of other communications after Capital Senior put them and their employers on notice of pending litigation.  Accordingly, Capital Senior is entitled to an Order that compels Barnhiser and Selders to produce to any Devices they have owned or used so that an independent e-discovery firm, Vestige, Ltd., may make a forensic image of them and review them for relevant records and evidence of spoliation.

**II. FACTS**

    **A. Capital Senior demanded that Barnhiser preserve all evidence, including all text messages and data Stored on mobile devices.**

Capital Senior's claims against Barnhiser and Selders in this action – breach of contract, tortious interference with business relationship, misappropriation of trade secrets, and breach of duty of loyalty – revolve largely around the conduct and communications that Barnhiser and Selders engaged in with each other and others both during and following the separation of their employment with Capital Senior.

Prior to bringing this action, on January 24, 2022, Capital Senior sent a cease-and-desist letter to Barnhiser, copying Defendant Maumee Pointe, LLC ("Maumee Pointe"). In the letter, Capital Senior gave notice to Barnhiser that she was required to preserve all evidence, including all text messages and data having to do with her former employment with Capital Senior and her new employment at Maumee Pointe, an assisted living facility that competes with Capital Senior's assisted living facility, The Waterford at Levis Commons in Perrysburg, Ohio:

> Given this prospect of legal action, you have a duty to preserve any documents, records, and electronically stored information relating or referring to these activities. Electronically stored information including, without limitation, emails, text, social media/social networking archives, and data stored on mobile devices, computers, laptops, servers, cloud computing platforms.

A true and accurate copy of the January 24, 2022-Letter to Barnhiser is attached as **Exhibit A** (emphasis in original).

On January 31, 2022, Defendant Meridian Senior Living, LLC ("Meridian") confirmed receipt of the letter and assured Capital Senior that it expected Barnhiser to comply with her post-employment obligations to Capital Senior. A true and accurate copy of the January 31, 2022-Letter to Capital Senior is attached as **Exhibit B**.

2

On March 30, 2022, Capital Senior sent a cease-and-desist letter to Meridian regarding Barnhiser's unlawful conduct, including her solicitation of Selders. Capital Senior also reminded Meridian and Barnhiser for a second time that they were required to preserve any evidence:

> Given this prospect of legal action, Meridian Senior Living and Ms. Barnhiser have a duty to preserve any documents, records, and electronically stored information relating or referring to these activities. Electronically stored information including, without limitation, Emails, social media, social networking archives, websites, text messages, and data stored on mobile devices, computers, laptops, servers, and cloud platforms.

A true and accurate copy of the March 30, 2022-Letter to Meridian is attached as **Exhibit C**.

### B. Barnhiser and Selders admitted to deleting text messages and refused to provide their Devices for imaging and forensic examination.

On November 23, 2022, Capital Senior served its written discovery requests on Barnhiser and Selders. On January 13, 2023, Barnhiser and Selders served their answers and responses to Capital Senior's written discovery requests. A true and accurate copy of the Answers and Objections of Defendant Heather Barnhiser to Plaintiff's First Set of Interrogatories and Requests for Production of Documents and Things ("Barnhiser's Discovery Responses") is attached as **Exhibit D**. A true and accurate copy of the Answers and Objections of Defendant Ellie Selders to Plaintiff's First Set of Interrogatories and Requests for Production of Documents and Things ("Selders' Discovery Responses") is attached as **Exhibit E**.

In Barnhiser's Discovery Responses, Barnhiser answered Interrogatory No. 8, which sought the identification of communications between her and any Capital Senior employees since her separation, by describing various in-person conversations, telephone conversations and text-message conversations that she had with Capital Senior employees in Fall 2021 and Spring 2022. Barnhiser described her communications as follows:

> (1) In the Winter of 2021, Defendant Barnhiser had a phone conversation with Waterford employee Chris Zalinski where Defendant Barnhiser generally discussed Ms. Zalinski's employment with the Waterford.

3

>(2) In the Fall of 2021, *Defendant Barnhiser and Kim Wota [sic] texted* concerning their general statuses at their respective employers.
>
>(3) In the Fall of 2021, *Darlene Lubinski texted Defendant Barnhiser* and stated something to the effect of "get me out of here" in reference to The Waterford.
>
>(4) In the Fall of 2021, *Savannah White texted Defendant Barnhiser* and asked her where Defendant Barnhiser was employed and whether Defendant Barnhiser would hire Ms. White.
>
>(5) In the Fall of 2021, *Dawna Clark texted Defendant Barnhiser* concerning Defendant Barnhiser's employment at Maumee Pointe.
>
>(6) In the Spring of 2022, Morgan Jahna visited another employee at Maumee Pointe. While Ms. Jahna was at Maumee Pointe, Defendant Barnhiser greeted her. During their interaction, Ms. Jahna discussed with Defendant Barnhiser Ms. Jahna's experience working at The Waterford. Defendant Barnhiser did not introduce the topic of the Waterford.

Ex. D, Answer to Interrogatory No. 8 (emphasis added). Woda is an administrative assistant at Capital Senior; Darlene Lubinski was a licensed practical nurse at Capital Senior who later worked for Meridian at Maumee Pointe; Savanah White was a care manager at Capital Senior who later worked for Meridian at Maumee Pointe; and Dawna Clark was a lead care manager and scheduler at Capital Senior who later worked for Meridian at Maumee Pointe.

Additionally, Barnhiser also produced two text-message conversations in her answer to Interrogatory No. 8. The first text-message conversation was between Barnhiser and William Richardson, the former dietary director at Capital Senior who later worked for Meridian at Maumee Pointe, which took place between Fall 2021 through February 27, 2022. A true and accurate copy of the Barnhiser text messages with Richardson is attached as **Exhibit F**. The second was between Barnhiser and Selders, which took place between October 22, 2021 and November 17, 2021. A true and accurate copy of the Barnhiser text messages with Selders is attached as **Exhibit G**. Finally, Barnhiser noted that she does not possess any other relevant communications because she

4

routinely deleted the text messages before the lawsuit was filed on April 14, 2022, despite being put on notice to preserve all evidence:

> **Interrogatory No. 8:** Identify any and all communications between You and any and all employees, agents and/or representatives of Capital Senior since the separation of Your employment with Capital Senior, and state the date of such communication and the medium utilized for the communication.
>
> **RESPONSE:** … Defendant Barnhiser further states that she does not have access to *certain text messages prior to April 2022 due to the fact that she had a routine practice of deleting text messages from her cell phone inbox, regardless of sender*. Defendant Barnhiser has taken steps to obtain any potentially relevant text messages and will continue to do so to the extent possible. Since the inception of the lawsuit, Defendant Barnhiser ceased her practice of routine deletions and has preserved all relevant evidence.

Ex. D, Answer to Interrogatory No. 8 (emphasis added).

In Barnhiser's Discovery Responses, Barnhiser also refused to produce for imaging any Devices she possesses in response to Production Request No. 19:

> **Production Request No. 19:** Produce for imaging of the hard drive all computers and phones in Your possession or control that You used or may have used during the period of July 1, 2021 through the present.
>
> **RESPONSE:** Defendant Barnhiser objects to Request No. 19 on the ground it is overbroad, unduly burdensome, not relevant, overly intrusive, and not proportional to the needs of the case. Plaintiff has not provided any reason in its Complaint or otherwise as to how and why the hard drives of all of Defendant Barnhiser's computers and phones are related to the claims and/or defenses of this Litigation. There are no allegations Defendant Barnhiser sent herself or any third party Waterford or Capital Senior information (which she did not), nor are there any allegations she improperly removed any property, documents, or other information from The Waterford's premises, its intranet, its systems, or her Waterford desktop computer. The Waterford management physically watched Defendant Barnhiser pack up her belongings on her last day of employment and escorted her off the premises, again establishing she did not take any Waterford or Capital Senior information with her. Defendant Barnhiser also did not have a laptop from The Waterford or Capital Senior and only used the desktop at The Waterford to perform her work. Defendant Barnhiser further objects to the time period, July 1, 2021 through the present, as being overbroad where the Complaint states Defendant Barnhiser did not provide her notice of resignation to Plaintiff until

> November 2021, and Plaintiff's Complaint contains no allegations justifying such an expansive time period. This Request No. 19 further implicates the privacy of individuals not party to this Litigation considering Defendant Barnhiser's personal information and that of her family is contained on her personal computers and phones. This Request is the definition of a fishing expedition. Defendant Barnhiser has already agreed to produce any documents in her possession remotely relating to The Waterford or Capital Senior as set forth herein, none of which have been shared with any third-party, including the named Defendants. Defendant Barnhiser will not agree to produce items in response to Request No. 19.

Ex. D, Response to Production Request No. 19.

In Selders' Discovery Responses, Selders answered Interrogatory No. 8, which sought identification of communications between her and employees of Maumee Pointe or Meridian, by stating that she "has had conversations" with Barnhiser concerning "Barnhiser's employment with Capital Senior as it relates to this Lawsuit and otherwise." Unlike Barnhiser, Selders made no mention of any text messages between the two of them. Additionally, in response to Interrogatory No. 10, which sought identification of communications with any employees of Capital Senior since the separation of her employment, Selders answered that she "has had continuing conversations of a personal nature with Meredith Gladwell, Courtney Snyder, and Darlene Lubinski. Additionally, *Jen Fackler texted Defendant Selders* the day after her departure from Aegis Therapies regarding her company password, to which Defendant Selders did not respond." Ex. E, Response to Production Request No. 8; Response to Production Request No. 10 (emphasis added).

Furthermore, in response to Production Request No. 20, Selders admitted that she had deleted all text messages in her possession prior to Capital Senior filing this action:

> **Production Request No. 20:** Any and all recordings, data, correspondence and other documents (including, but not limited to Email, Facebook messages, and other electronically stored information) in any medium that relate in any way to the allegations contained in the Complaint.

6

> **RESPONSE:** … Defendant Selders further states that she does not have access to *certain text messages prior to April 2022 due to the fact that she had a routine practice of deleting text messages from her cell phone inbox, regardless of sender*. Defendant Selders has taken steps to obtain any potentially relevant text messages and will continue to do so to the extent possible. Since the inception of the lawsuit, Defendant Selders ceased her practice of routine deletions and has preserved all relevant evidence.

Ex. E, Response to Production Request No. 20.

In Selders' Discovery Responses, Selders similarly refused to produce for imaging any Devices she possesses in response to Production Request No. 21:

> **Production Request No. 21:** Produce for imaging of the hard drive all computers and phones in Your possession or control that You used or may have used during the period of July 1, 2021 through the present.
>
> **RESPONSE:** Defendant Selders objects to Request No. 21 on the ground it is overbroad, unduly burdensome, overly intrusive, not proportional to the needs of the case, and unrelated to any Party's claims and/or defenses in this Litigation, particularly as it relates to Defendant Selders. Plaintiff has not provided any reason in its Complaint or otherwise as to how and why the hard drives of all of Defendant Selders's computers and phones are related to the claims and/or defenses of this Litigation. There are no allegations Defendant Selders sent herself or any third party Waterford or Capital Senior information (which she did not), nor are there any allegations she improperly removed any property, documents, or other information from The Waterford's premises, its intranet, its systems, or any Waterford desktop computer on which she worked. Defendant Selders also objects to the time period, July 1, 2021 through the present, as being overbroad where the Complaint states Defendant Selders's employment at The Waterford ended in January 2022, and Plaintiff's Complaint contains no allegations justifying such an expansive time period. This Request No. 21 further implicates the privacy of individuals not party to this Litigation considering Defendant Selders's personal information and that of her family is contained on her personal computers and phones. This Request is the definition of a fishing expedition. Defendant Selders has already agreed to produce any documents in her possession remotely relating to The Waterford or Capital Senior as set forth herein, none of which have been shared with any third-party, including the named Defendants. Defendant Selders will not agree to produce items in response to Request No. 21.

Ex. E, Response to Production Request No. 21.

7

On February 6, 2023, Capital Senior sent a discovery deficiency letter to Barnhiser and Selders stating that, contrary to their objections, it is entitled to forensically examine Barnhiser's and Selders' Devices "for relevant documents and communications, including text and social media messages, as well as investigate whether Barnhiser or Selders transferred Capital Senior's confidential information and trade secrets using these devices." Further, Capital Senior stated that it is entitled to forensically examine the Devices for evidence of deleted text messages as well as Barnhiser's and Selders' alleged routine of deleting text messages from all senders prior to Capital Senior filing this action. Finally, Capital Senior noted: "Any search would be done by a third-party vendor using protocols that protect personal or privileged information from disclosure." A true and accurate copy of Capital Senior's February 6, 2023-Letter to Barnhiser and Selders is attached as **Exhibit H**.

On February 16, 2023, Barnhiser and Selders responded that they were working with their respective service providers to determine if it was possible to retrieve any text messages not currently stored on their Devices. Nevertheless, they stated that they continued to object to the production of their Devices as not "appropriate or necessary." A true and accurate copy of Barnhiser's and Selders' February 16, 2023-Letter to Capital Senior is attached as **Exhibit I**.

On February 21, 2023, the parties conferred via video in an attempt to resolve the issue related to the Devices. During the conference, Capital Senior requested an update on the retrieval of deleted text messages from Barnhiser's and Selders' respective service carriers. Barnhiser and Selders responded that they would provide an update by March 1, 2023. Capital Senior stated that it reserved the right to bring the issue before the Court if Barnhiser and Selders could not retrieve the text messages from their service carriers.

On March 1, 2023, Barnhiser and Selders responded that they would not produce the Devices for imaging and forensic evaluation:

> [A]s it relates to the forensic cell phone review for Ms. Barnhiser and Ms. Selders, we will not agree to produce their cell phones for examination. While we appreciate the opportunity to further consider this issue, we maintain our position that this request is an overreach and that searching Defendants' personal cell phones for text message artifacts is unnecessary, burdensome, and intrusive. Defendants have produced all text messages in their possession. And, as noted in their interrogatory responses, Defendants Barnhiser and Selders did not intentionally delete any text messages, but instead had a general practice of regularly deleting text messages from their devices. And, both suspended this general practice when instructed by counsel to do so via legal hold. Both have attempted to recover any deleted messages but have thus far been unable to do so.

A true and accurate copy of Barnhiser's and Selders' March 1, 2023-Email is attached as Exhibit **J**. This Motion now follows.

### III. ARGUMENT

#### A. Standard of Review

The Federal Rules of Civil Procedure authorize extremely broad discovery. *United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 657 (6th Cir. 1976). Therefore, Fed. R. Civ. P. 26 is to be construed liberally in favor of allowing discovery. *Dunn v. Midwestern Indem.*, 88 F.R.D. 191, 195 (S.D. Ohio 1980). Any matter that is relevant, in the sense that it reasonably may lead to the discovery of admissible evidence, and is not privileged, can be discovered. *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499 (6th Cir. 1970) ("The concept of relevance during discovery is necessarily broader than at Trial. The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence.") Indeed, Fed. R. Civ. P. 26(b) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information,

9

>  the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope need not be admissible in evidence to be discoverable.

In short, "a plaintiff should have access to information necessary to establish her claim, but ... a plaintiff may not be permitted to 'go fishing'; the trial court retains discretion." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).

In considering a motion to compel discovery, "District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citations omitted). "It is well established that the scope of discovery is within the sound discretion of the trial court." *Id.* (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)). The movant bears the initial burden of showing that the information sought is relevant. *Prado v. Thomas*, No. 3:16-cv-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *Gruenbaum v. Werner*, 270 F.R.D. 298, 302 (S.D. Ohio 2010)). If the movant makes this showing, "then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Id.* (citing *O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (stating that a party claiming undue burden or expense "ordinarily has far better information— perhaps the only information—with respect to that part of the determination" and that a "party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them").

### B. Barnhiser's and Selders' Devices likely contain relevant documents and evidence of spoliation.

The text-message conversations that Barnhiser and Selders have identified in their Discovery Responses are plainly relevant to Capital Senior's claims against Defendants for breach

of contract, tortious interference with business relationship, misappropriation of trade secrets, and breach of duty of loyalty. Barnhiser, who is bound by post-employment contractual obligations to Capital Senior, admitted that she exchanged text messages with Woda, an administrative assistant with Capital Senior, as well as Lubinski, White, Clark, Richardson, and Selders, all of whom left Capital Senior to work for Meridian at Maumee Pointe. Yet, she only produced certain messages with Richardson[1] and Selders. Similarly, Selders, who owed Capital Senior a duty of loyalty, admitted that she communicated with former Capital Senior employees as well, both during and after she resigned from Capital Senior, but has not produced any text messages. The relevance of the exact substance of those text-message conversations and the contact information in the Devices cannot be overstated. It is also necessary to test the recollection of Barnhiser and Sellers to determine whether they possess text messages with other current or former Capital Senior employees who went to work for Meridian at Maumee Pointe. Furthermore, Barnhiser's and Selders' Devices likely contain extensive information reasonably calculated to lead to the discovery of admissible evidence regarding Barnhiser's use of Capital Senior's confidential information and trade secrets. Accordingly, Capital Senior is entitled to forensically image and search the Devices for evidence of them as well as any other relevant communications not identified by Barnhiser and Selders.

Additionally, Barnhiser's and Selders' claim that they do not possess "text messages prior to April 2022 due to the fact that [they] had a routine practice of deleting text messages from her cell phone inbox, regardless of sender" does not jibe with reality. Barnhiser produced text

---

[1]Additionally, the text messages between Barnhiser and Richardson appear to list Richardson under a contact name "Maumee Pointe ED," but Barnhiser provided no explanation for this contact name or whether it was part of a group message. Capital Senior is entitled to see the mobile phone numbers used by Barnhiser and Selders to determine if either of them contacted other current or former Capital Senior employees or residents.

messages between her and Richardson from Fall 2021 through February 27, 2022, and text messages between her and Selders from October 22 through November 17, 2021. If they had a routine of deleting messages regardless of the sender, then Capital Senior could reasonably ask why *do* the Richardson and Selders text messages exist? As the Southern District recently recognized, "discrepancies or inconsistencies in the responding party's discovery responses may justify a party's request to allow an expert to create and examine a mirror image of a hard drive." *Delta T, LLC v. Williams*, 337 F.R.D. 395, 403 (S.D. Ohio 2021) (quoting *Hawkins v. Ctr. for Spinal Surgery*, No. 3:12-1125, 2015 WL 3795297, at *1 (M.D. Tenn. June 18, 2015)). *Delta T* found that a defendant's failure to produce relevant documents that the plaintiff had copies of weighed in favor of ordering an image and forensic exam of the defendant's devices. *Id*.

Capital Senior's Motion should be granted for the same reason. Barnhiser's explanation of her "routine practice" regarding text messages is indisputably inconsistent with her possession and production of the Richardson and Selders text messages.

Finally, as to Barnhiser, she has admitted that she routinely deleted text messages prior to this action being filed despite the fact that Capital Senior put her on notice on January 24, 2022, that she had a duty to preserve including all text messages and data having to do with her former employment with Capital Senior and her new employment at Maumee Pointe. A potential litigant has a "common-law duty" to "preserve relevant information when litigation is reasonably foreseeable. "Fed. R. Civ. P. 37(e) Advisory Comm. Notes (2015). As a result, Capital Senior is entitled to forensically examine the Devices for evidence of deleted text messages as well as Barnhiser's and Selders' alleged routine of deleting text messages from all senders prior to Capital Senior filing this action.

C. **Capital Senior's proposed forensic imaging and review process is narrowly tailored and limited in scope.**

In its Proposed Order, Capital Senior sets forth a limited third-party forensic review of Barnhiser's and Selders' Devices. The protocol would be as follows: (1) an independent e-discovery firm, Vestige, Ltd. ("Vestige"), would make a forensic image of the Devices; (2) Vestige would search the forensic images of the Devices using specific search terms agreed to by the parties that would be designed solely to recover records related to communications between Barnhiser and Selders and current and former Capital Senior employees and residents; (3) Vestige would first provide the records recovered in the search to Barnhiser's and Selders' counsel, who would be permitted to review the records for privilege and relevance before they are produced to Capital Senior's counsel along with a log of records withheld by Barnhiser and Selders based on privilege and relevance; (4) any dispute regarding the withheld documents would be presented to this Court with copies of the objected-to documents for an in camera inspection; and (5) Vestige would conduct a forensic review of the forensic images to determine the presence of evidence related to the transfer of Capital Senior's confidential information and trade secrets as well as spoliation. Additionally, Capital Senior would initially bear the cost of the forensic imaging and review, subject to its right to move the Court for an award of such costs at a later date.

This is the exact type of proposed search that *Delta T* held was "tailored and constrained" and designed "to return only relevant material." 337 F.R.D. at 401. Indeed, as *Delta T* noted, "[s]everal other courts have ordered similar or identical procedures." *Id*. (citing *Genworth Fin. Wealth Mgmt. v. McMullan*, 267 F.R.D. 443, 447 (D. Conn. 2010); *Bennett v. Martin*, 186 Ohio App. 3d 412, 2009-Ohio-6195, 928 N.E.2d 763, ¶ 47 (10th Dist.) (articulating a practically identical protocol based on collected cases); *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D.

13

645, 653 (D. Minn. 2002); *Simon Prop. Group L.P. v. MySimon, Inc.*, 194 F.R.D. 639, 643 (S.D. Ind. 2000); *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1055 (S.D. Cal. 1999)).

It also alleviates any concerns about the privacy of Barnhiser and Selders or third parties. Relying on agreed-to search terms as well as an initial review of records recovered by the search by Barnhiser and Selders would eliminate any blanket production of non-relevant, private records as well as privileged material.

### D. A forensic image and review of Barnhiser's and Selders' Devices would not constitute an undue burden or expense.

Contrary to the objections in their Discovery Responses, making a forensic image and reviewing the Devices would not impose an undue burden or expense on Barnhiser or Selders. Indeed, Capital Senior has agreed to incur the initial expense related to the forensic imaging and review. Moreover, even if Capital Senior's request could be viewed as unduly burdensome or expensive, good cause exists for the Court to compel Barnhiser and Selders to produce their Devices to Capital Senior for imaging and review.

First, the discovery sought is not unreasonably cumulative or duplicative because only a search of Barnhiser's and Selders' Devices could reveal the actions that they took with Meridian and Maumee Pointe against Capital Senior, including conversations with Capital Senior's residents and employees. *See Delta T*, 337 F.R.D. at 400 (S.D. Ohio 2021) (recognizing that "forensic imaging is not uncommon in discovery and that courts have compelled forensic imaging of opposing parties' devices for a variety of reasons."). Limited discovery in this action has already revealed a deep disparity between Barnhiser's and Selders' version of events and factual evidence. Taking Barnhiser's and Selders' depositions without the forensic examinations of their Devices would not cure those disparities.

Second, for the same reason, the records sought by Capital Senior cannot be obtained from some other source that is less burdensome or less expensive. Barnhiser's and Selders' Devices hold the only accurate account of their actions and spoliation. Capital Senior believes it likely that Barnhiser's and Selders' Devices contain their communications with Meridian and Maumee Pointe about their scheme and evidence of their use and disclosure of Capital Senior's confidential information and trade secrets. It is indisputable that the Devices now or used to contain their communications with current and former residents and employees of Capital Senior.

Finally, the cost of the imaging does not outweigh the benefit Capital Senior would receive, both in terms of probative evidence and the recoupment of its confidential information and trade secrets. Accordingly, Barnhiser and Selders should be compelled by this Court to produce their Devices to Capital Senior under Fed. R. Civ. P. 37(a), so that Capital Senior may image them and examine both their contents and the manner in which Barnhiser and Selders used them during their employment at Capital Senior and thereafter.

### IV. CONCLUSION

For the foregoing reasons, Capital Senior respectfully requests that this Court issue an Order compelling Barnhiser and Selders to produce to any Devices they have owned or used from July 1, 2021 through the present so that Vestige may make a forensic image of them and review them for relevant records and evidence of spoliation. A Proposed Order will be sent to the Court.

Respectfully submitted,

*s/ Richard E. Hepp*
Joseph N. Gross, Trial Attorney
Bar Number 0056241
Richard E. Hepp
Bar Number 0090448
**BENESCH, FRIEDLANDER,**
 **COPLAN & ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone: 216.363.4500
Facsimile: 216.363.4588
Email: jgross@beneschlaw.com
 rhepp@beneschlaw.com

*Attorneys for Plaintiff Capital Senior Living, Inc.*