## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Capital Senior Living, Inc.                               CASE NO. 3:22-CV-00606

            Plaintiff,                          Judge James G. Carr

    v.

Heather Barnhiser, *et al.*,                      **ORDER**

            Defendants.

This is a breach of contract case. Plaintiff, Capital Senior Living LLC ("Capital Senior")
sued its former employees, Heather Barnhiser ("Barnhiser") and Ellie Selders ("Selders") and their
current employers Meridian Senior Living, LLC ("Meridian") and/or Maumee Pointe ("Maumee
Pointe"). Capital Senior contends that Barnhiser and Selders violated a non-solicitation restrictive
covenant that they signed while employed at Capital Senior. It alleges that Meridian, and Maumee
Point, should have prevented its employees from violating the non-solicitation agreement. (*Id.*).

Before me is Capital Senior's motion for sanctions against Barnhiser and Meridian for
spoliation of evidence. (Doc. 38). Barnhiser and Meridian have filed an opposition (Doc. 39) and
Plaintiff has filed a reply (Doc. 40).

Capital Senior contends that Barnhiser destroyed tens of thousands of relevant text
messages after Capital Senior instructed her to preserve potential evidence. (Doc. 38, Page ID.
1341–1359). It contends that Meridian also knew that Barnhiser was obligated to preserve
evidence, but did not take steps to ensure Barnhiser's compliance. (*Id.* at PageID. 1345).

Meridian argues that it lacked control of Barnhiser's text messages, that Barnhiser's
conduct was not intentional, and that the deleted texts were not relevant. (Doc. 39, PageID. 2756–
2757).

For the reasons that follow, I grant Capital Senior's motion as set forth herein.

## Background

Capital Senior provides management services to an independent living and assisted living facility known as The Waterford at Levis Commons. (Doc. 1, PageID. 2). Barnhiser worked for Capital Senior as the Executive Director of The Waterford from November 2020 until November 2021. (*Id*.).

Meridian operates independent living, assisted living, and memory care facilities across the United States. (*Id*.). Meridian is a direct competitor to Capital Senior. (*Id*.). Meridian operates Maumee Pointe, which is an assisted living facility located just five miles away from The Waterford at Levis Commons. (*Id*.). Barnhiser is now the Executive Director of Defendant Maumee Pointe and works for Meridian and/or Maumee Pointe. (*Id*.).

On November 16, 2020, while Barnhiser worked at Capital Senior, she signed a one-year non-solicitation agreement. It stated, in relevant part:

> Employee further agrees that for one year immediately following the termination of such employment for any reason, Employee shall not for himself or herself, or for any third party, directly or through another person acting in concert with Employee:
>
> (i)      Divert or attempt to divert from Employer any business of any kind… including, without limitation, the solicitation of… competitive business services with any of Employer's clients, residents or customers […]; or
>
> (ii)     Employ or solicit from employment any person with whom Employee came into contact and who was employed by Employer in order to compete with same […]

(Doc. 1-1, PageID. 22–23).

Capital Senior claims that Barnhiser directly or indirectly solicited at least ten of Capital Senior's employees and five residents of The Waterford facility in violation of the agreement. (Doc. 38, PageID. 1344).

On January 24, 2022, three months before it filed this lawsuit, Capital Senior directly sent Barnhiser a litigation hold letter. (Doc. 38, PageID. 1347). The hold letter instructed Barnhiser to "preserve any documents, records, and electronically stored information relating or referring to" her activities with Meridian and Maumee Pointe, "including, without limitation, emails, texts, social media/social networking archives, and data stored on mobile devices, computers, laptops, servers, [and] cloud computing platform." (*Id*. at PageID. 1345).

On January 25, 2022, Barnhiser received that litigation hold letter from Meridian. (*Id*.). She gave a copy of it to Meridian's general counsel. (*Id*. at PageID. 1348). Thus, Capital Senior directly communicated to Barnhiser her responsibilities under the litigation hold.

There can therefore be no question as to whether both Barnhiser and her new employer were well-aware of their obligations under the litigation hold.

On January 31, 2022, Meridian responded to the January 24, 2022 letter. In its response, Meridian stated: "Please be assured that we expect our employees to comply with enforceable agreements they have with former employers." (Doc. 1-3, PageID. 30).

On March 30, 2022, Capital Senior's counsel sent Meridian's general counsel another letter. (Doc. 1-4, PageID. 32). This letter indicated that, despite Meridian's assurances that it expected Barnhiser to comply with her agreements, it believed that Barnhiser "has carefully, yet blatantly, continued her orchestrated raid of the Waterford's employee's and residents." (*Id*.). The letter requested that Meridian and/or Maumee put a stop to Barnhiser's conduct and indicated it was contemplating legal action. (*Id*.).

3

Capital Senior filed this lawsuit on April 14, 2022. (Doc. 1).

On November 23, 2022, Plaintiff served a set of interrogatories on Barnhiser. Interrogatory No. 8 stated:

> Identify any and all communications between you and any and all employees, agents and/or representatives of Capital Senior since the separation of your employment with Capital Senior, and state the date of such communication and the medium utilized for the communication.

(Doc. 39-4, PageID. 2787).

After setting forth nearly a full page of boilerplate objections, Barnhiser responded as follows:

> Subject to and without waiving the foregoing and General Objections, Defendant Barnhiser agrees to produce communications in her possession she had with employees of The Waterford regarding her employment with and/or separation from The Waterford and related to her employment with Meridian.

(Doc. 39-5, PageID. 2805). She also detailed several communications with specific individuals and explained:

> Defendant Barnhiser further states that she does not have access to certain text messages prior to April 2022 due to the fact that she had a routine practice of deleting text messages from her cell phone inbox, regardless of sender. Defendant Barnhiser has taken steps to obtain any potentially relevant text messages and will continue to do so to the extent possible. Since the inception of the lawsuit, Defendant Barnhiser ceased her practice of routine deletions and has preserved all relevant evidence.

(*Id*. at PageID. 2806).

On April 17, 2023, I granted Capital Senior's motion to compel as follows:

> Leave granted to Plaintiff's counsel to proceed with third party for mirror imaging and creation of search terms. Plaintiff's counsel to provide Defense counsel with search terms for consultation and objections. Search will be limited to dates of November 2021 forward. If any objections, counsel is to promptly notify the court.

(*Minute Order*, April 17, 2023).

4

On June 15, 2023, the third-party vendor that conducted the digital imaging, Vestige Digital Investigation ("Vestige"), issued a Digital Forensic Analysis Report of Findings (the "Report"). (Doc. 38-5, PageID. 1554–1564). The Report indicates that Barnhiser deleted 29,700 text messages between October 24, 2021 and October 25, 2022 and 8,482 text messages between October 26, 2022 and May 9, 2023. (*Id.* at PageID. 1559).

## Standard of Review

Spoliation is "the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction." *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 804 (6th Cir. 1999). "[A] proper spoliation sanction should serve both fairness and punitive functions." *Adkins v. Wolever*, 554 F.3d 650, 653 (6th Cir. 2009) (en banc). "The severity of sanctions issued is determined on a case-by-case basis, depending in part on the spoliating party's level of culpability." *Flagg v. City of Detroit*, 715 F.3d 165, 178 (6th Cir. 2013).

## Discussion

Under a Federal Rule of Civil Procedure 37 motion, a party seeking sanctions for an opponent's spoliation of evidence must establish:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Beaven v. U.S. Dept. of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (citations omitted).

### A.  Control and Duty to Preserve

The first *Beaven* element I must analyze is whether Barnhiser and/or Meridian had control over Barnhiser's text messages. If so, I must then analyze whether Barnhiser and/or Meridian had a duty to preserve them from destruction.

5

Neither party disputes that Barnhiser had control over the text messages on her phone.

Whether Meridian had control is another issue. "Federal courts are divided on what circumstances render an employee's personal device subject to the 'possession, custody, and control' of its employer," however, "generally the plaintiff must show that personal devices were used for business purposes." *Union Home Mortg. Corp v. Jenkins*, No. 20-cv-2690, 2021 WL 1110440, at *28 (N.D. Ohio, March 23, 2021) (Barker, J.) (internal citations omitted).

For purposes of spoliation motions, courts deem evidence to be "under a party's control when that party has the right, authority, or practical ability to obtain the [evidence][.]" *Goodman v. Praxair Svcs, Inc.*, 632 F. Supp. 2d 494, 515 (D. Md. 2009); *cf. Arch Ins. Co. v. Broan–NuTone, LLC*, 509 F. App'x 453, 458–59 (6th Cir. 2012) (litigant controlled evidence where it hired third-party to store evidence); *Coach, Inc. v. Dequindre Plaza, L.L.C.*, No. 11-cv-14032, 2013 WL 2152038, *7–8 (E.D. Mich. May 16, 2013) (litigants having the power to authorize a non-party to destroy the evidence controlled it). Meridian would therefore need to have the right, authority, and ability to obtain the evidence from Barnhiser's phone for Meridian to have control over it.

Courts have found that "neither physical possession nor legal ownership of the documents is required" for a party to be in control. *Libertarian Party of Ohio v. Husted*, No. 2:13-CV-953, 2014 WL 3928293, at *1 (S.D. Ohio Aug. 12, 2014).

Capital Senior argues that Meridian controlled Barnhiser's work-related text messages because Meridian employed Barnhiser. Thus, Capital Senior argues, Meridian had the "right, authority or practicable ability" to obtain Barnhiser's work-related text messages under that relationship. (Doc. 40, PageID. 2901).

Meridian responds that it had no obligation to preserve Barnhiser's texts because it "never possessed or otherwise controlled Barnhiser's personal cell phone." (Doc. 39, PageID. 2762).

Further, Meridian states that Capital Senior cannot prove that Meridian had or should have had control over Barnhiser's texts. I emphatically disagree.

As an initial matter, Barnhiser's interrogatory responses readily acknowledge that she used her personal cell phone for work purposes. And the subject matter in some of those text messages clearly indicate that Barnhiser discussed Meridian's potential employment needs, which is a work-related purpose. For example:

- On October 19, 2021, Barnhiser sent a text message to Capital Senior's Dietary Director stating: "[k]eep in touch because I am building a new entire team at where I'm going."

- On October 22, 2021, Barnhiser sent a text message to Capital Senior's Lead Care Manager stating: "I got you. I start November 8 - I will know more. I would take you in a heartbeat."

- On November 8, 2021, Barnhiser sent a text message to a Capital Senior employee stating: "I would hire you in a heartbeat. I do need aids I also need a front desk person too."

(Doc. 38, PageID. 1344).

Though these messages were sent and received before Barnhiser began working for Meridian, Barnhiser testified that she "routinely used her personal phone for work purposes after" working with Meridian. (Doc. 40, PageID. 2906).

Meridian had control over Barnhiser's text messages. Meridian's January 25, 2022 response to Capital Senior's initial letter, which indicated that its employees would honor their non-solicitation agreements, evidences its control over Barnhiser's communications. If Meridian did not have any control over Barnhiser's actions and communications, it would have been illogical for Meridian to assure Capital Senior of Barnhiser's compliance.

Moreover, Plaintiff testified that Meridian instructed her to preserve her communications in the ordinary course. (*See* Doc. 38-1, PageID. 1368 ("Nobody said that other than, you know,

like, employee files have to be preserved no matter what through the State of Ohio for a certain amount of time anyways. So normal, under law obligations, what we're supposed to preserve, I was not told anything in addition.")).

Let us, in any event, look at the reality of the overall situation.

First: Meridian knew full well that Barnhiser had the same job from its down the road competitor for which Meridian was hiring her. Second: Meridian was at least on constructive if not actual notice that Barnhiser was actively causing Meridian's then-current employees to join her at Meridian. Third: filling staff positions for a newly-opening facility would necessarily have been one of Barnhiser's principle responsibilities.

In other words, Barnhiser was doing what Meridian necessarily needed her to do: building a staff. Under these circumstances and the law, which I cite above, it beggars the imagination to contend, as Meridian does, that somehow it was not in a position to say to Barnhiser at any time, "What is going on here? How come all of these folks are following you from Capital Senior? Tell us what is going on so that we don't wind up in litigation." Had Meridian asked these questions, Barnhiser, its employee, of necessity—if she wanted to keep her new job—had to answer them.

After all, Meridian is a co-defendant in this lawsuit. And probably the only deep pocket in sight. It may consider it to be in its own self-interest to try to cleanse its hands of any culpability for Barnhiser's conduct.

If that is the situation, it has every reason vigorously to help not hinder Capital Senior in uncovering the full measure of what Barnhiser did while allegedly breaching the non-solicitation agreement.

Simply put: Meridian has more than enough control over Barnhiser to gain whatever information Capital Senior may want from Barnhiser.

I also find that both Barnhiser and Meridian had a duty to ensure that the text messages were preserved and not deleted. A party has "a duty to preserve evidence 'when a party should have known that the evidence may be relevant to future litigation.'" *Beaven*, *supra*, 622 F.3d at 553.

Certainly, after Capital Senior sent Barnhiser the January 24, 2022 letter, Barnhiser was indisputably on notice not to destroy any communications with Capital Senior employees.

And Capital Senior notified Meridian immediately thereafter that it expected Barnhiser to comply with her obligations. (Doc. 39, PageID. 2757). Meridian felt comfortable in providing that assurance to Capital Senior. Given that reassurance and promise, Meridian had undertaken, at the very least, a legally cognizable and enforceable obligation to see to it that it could and would make good on that promise. Therefore, the duty to preserve unquestionably began after January 24, 2022 at the latest.

I thus conclude that Defendants Barnhiser and Meridian had the control over and a mutual duty after January 24, 2022 to preserve Barnhiser's work-related text messages on her personal phone.

### B. Culpable State of Mind

The next element in determining whether spoliation occurred is whether Barnhiser had a culpable state of mind when she deleted the text messages. A litigant establishes the "culpable state of mind' factor by "showing that the evidence was destroyed "knowingly, even if without intent to [breach a duty to preserve it], or *negligently*." *Beaven*, *supra*, 622 F.3d at 554 (emphasis in original).

An accurate assessment of Barnhiser's state of mind "is important because the Court can impose different spoliation sanctions, calibrating [the] severity of the remedy on the party's degree

of fault under the circumstances." *Crown Battery Mfg. Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 999 (N.D. Ohio 2016) (Carr, J.) (citing *Johnson v. Metro. Gov't of Nashville and Davidson County, Tenn*, 502 F. App'x 523, 533 (6th Cir. 2012)).

I need not find that Barnhiser acted in "bad faith" when deleting the text messages, however, to impose a sanction. "To the extent bad faith is relevant in a spoliation motion, its [*sic*] most appropriately taken into consideration when adjusting the sanction imposed." *Johnson*, *supra*, 502 F. App'x at 533.

Meridian and Barnhiser contend that Barnhiser deleted her text messages routinely and therefore the deletions did not amount to the culpability required to impose sanctions. (Doc. 39, PageID. 2759). I disagree.

First, Barnhiser testified that she preserved text messages starting January 25, 2022, which is when she received the litigation notice. (Doc. 38, PageID. 1347). However, as noted in her response to Interrogatory No. 8, Barnhiser stated that she did not have "access to certain text messages prior to April 2022 due to the fact that she had a routine practice of deleting text messages from her cell phone inbox, regardless of sender." (*Id.* at PageID. 1349). These responses are inconsistent. Either she preserved her text messages starting on January 25 or she did not. The forensic evidence shows that she did not.

Notably, Vestige found that the deletions "were not performed automatically by the iPhone" nor "by default" because her phone "is set to keep messages forever and this setting has never been changed." (*Id.* at PageID. 1351–1352). It follows that any deletions were therefore not automatic; rather, Barnhiser did so purposefully.

Second, Defendants argue that the sheer volume of text messages deleted is indicative of Barnhiser's intention to delete *en gros*, not to delete relevant evidence, specifically. (Doc. 38,

PageID. 1353). The problem is that we will never know if Defendants are right because Barnhiser deleted the messages and now they are gone. Regardless, Barnhiser had to suspend deletions after she became aware of the litigation hold, but she deleted texts anyway.

Defendants assert that Barnhiser's *post hoc* efforts to recover her messages from others disproves her culpability. (Doc. 39, PageID. 2759). I disagree. Defendants frame the issue by saying that Barnhiser's willingness to help find third parties who could supply text conversations with Barnhiser speaks to her objectives in trying to help resolve the lawsuit. (*Id.*). I am not persuaded that this fact mitigates her culpability at the time she made the deletions. However, whether well-intentioned or not, her *post hoc* efforts to reconstruct at least to some indeterminate extent, her communications cannot excuse her misconduct *ab initio*.

Finally, Defendants argue that Barnhiser is not culpable because she did not have the "education or experience to understand what Plaintiff believed to be relevant to any litigation Plaintiff could initiate based on Plaintiff's January 24 Letter." (Doc. 39, PageID. 2764–2765). This argument too is flawed.

The duty to understand preservation is "a duty incumbent upon her counsel to relate to her." *Faulkner v. Aero Fulfillment Servs.*, No. 19-cv-268, 2020 WL 3048177 at *5 (S.D. Ohio June 8, 2020). It was counsel's responsibility to convey the seriousness of this obligation, regardless of Barnhiser's capacity to understand those instructions. Once again, Defendants contentions beggar the imagination. It was Meridian's non-delegable duty to make clear to Barnhiser what her obligation was. I find it quite difficult to believe that either it or its attorneys did not take pains to make that duty clear to Barnhiser.

11

In any event, I cannot credit Meridian's contention that it hired someone experienced and smart enough to occupy an important position in its new venture, but that its Executive Director somehow could not understand the plain English of the litigation hold.

In other words: just what was it, specifically, in that language that Barnhiser, or any other adult, could not fully comprehend?

Accordingly, I have no difficulty in finding that Barnhiser knowingly spoliated text messages that she was required to preserve with the requisite degree of culpability to award sanctions.

### C. Relevant Evidence

The final *Beaven* consideration is whether the text messages are relevant to Capital Senior's claims. To establish relevance, the party seeking sanctions must make "some showing indicating the destroyed evidence would have been relevant to a contested issue ... such that a reasonable trier of fact could find that it would support that claim." *Beaven*, *supra*, 622 F.3d at 555.

"The relevance factor does not require proof that the lost or destroyed evidence would be dispositive of the party's claim." *McCarty v. Cobol Fuels No. 2*, LLC, 644 F. App'x 372, 379 (6th Cir. 2016). Relevance may be shown through evidence from which "a reasonable trier of fact could infer that the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction." *Automated Solutions Corp. v. Paragon Data Sys.*, 756 F.3d 504, 514 (6th Cir. 2014). "The moving party may rely on circumstantial evidence to make its showing of relevance." *Beaven*, *supra*, 622 F.3d at 555.

Capital Senior persuasively points to the three text messages discussed above that Barnhiser sent and/or received in October and November 2021, wherein she discussed needing to build a team and indicated she would be willing to hire Capital Senior employees. (Doc. 38,

PageID. 1344). Capital Senior sensibly argues that, based on this, it is reasonable to infer that at least some of the destroyed messages would have contained similar content. I agree.

Barnhiser's answers to Interrogatory No. 8 also persuade me that it is likely at least some of the destroyed messages would have been relevant. In that interrogatory response, Barnhiser discloses that she had discussions with Capital Senior employees regarding her responsibilities to build a team at Maumee Pointe. (*See, e.g.*, Doc. 39-7, PageID. 2844). Capital Senior also points to a Maumee Pointe job application where the applicant—a former Capital Senior employee— identified Barnhiser as the person who referred them to Meridian. (*See, e.g.*, Doc. 37-30 \*SEALED\*, PageID. 1330). These examples are highly indicative that Barnhiser had similar discussions with Capital Senior employees after she received the litigation hold dated January 24, 2022 and that at least some of these discussions were among the deleted text messages. (Doc. 38, PageID. 1349).

Additionally, Barnhiser testified that, after she began working for Defendant Meridian, she routinely used "her iphone for work purposes" adding to the very high probability that similar text messages existed and would have been relevant. (Doc. 40, PageID. 2906).

Capital Senior has therefore made a considerably more than minimal showing that at least some of the deleted text messages here are relevant to the contested facts. A reasonable trier of facts could reach the same conclusion. Accordingly, I find that all three *Beaven* elements are present and sanctions are appropriate.

### D.  Sanctions

Now, I must fashion the appropriate sanction against Barnhiser individually and Meridian on the basis of respondeat superior. The law gives me "broad discretion to craft proper sanctions for the spoliation of evidence." *Adkins*, *supra*, 554 F.3d at 503. Sanctions on a party "should serve

both fairness and punitive functions," but the gravity of the sanction should correlate to the court's determination after a "fact-intensive inquiry into a party's degree of fault" under the circumstances, which could range from "innocence through the degrees of negligence to intentionality." *Beaven*, *supra*, 622 F.3d at 554.

> Capital Senior requests that I impose the following sanctions:
>
> (1) requiring a mandatory adverse-inference instruction be issued to the trier of fact; (2) ordering Barnhiser and Meridian to pay $12,000 to Capital Senior as reimbursement for the costs related to the forensic examination of Barnhiser's iPhone; and (3) ordering Barnhiser and Meridian to pay Capital Senior's attorneys' fees for having to compel them to produce Barnhiser's iPhone and to make this Motion.

(Doc. 38, PageID. 1342).

First, Capital Senior seeks an adverse inference instruction. An adverse inference instruction is an appropriate sanction when the destruction of evidence "severely compromise[s]" the opposing party's case. *Beaven*, *supra*, 622 F.3d at 555. "This permissive form of adverse inference allows the factfinder to accept the inference and discredit the spoliating party's proffered evidence to the contrary." *Id.*

To impose an adverse inference sanction on a defendant, I must find, under Federal Rule of Civil Procedure 37(e)(2), that the defendant intended to deprive the plaintiff of the use of the text messages. "Negligent or even grossly negligent behavior" is not enough for an inference "that the lost information was unfavorable to the party who lost it." Fed. R. Civ. P. 37, 2015 Advisory Comm. Note.

While Defendants acknowledge that Barnhiser may have acted negligently as "she continued to follow her practice of routinely deleting text messages" they believe that her conduct does not meet the threshold showing that the texts were deleted with the intent to deprive Capital Senior of relevant evidence. (Doc. 39, PageID. 2768).

14

Barnhiser's deletions may, or may not, have been made in bad faith, but they were nonetheless purposeful.[1]

Barnhiser and Meridian knew about the January 24, 2022 litigation hold letter. Furthermore, the Vestige Report confirmed that Barnhiser deleted the text messages herself; and not through an automated process where she may (or may not) have been ignorant of what was happening.

Therefore, I find an adverse inference is appropriate.

Defendants argue that Capital Senior's adverse inference request goes too far. Capital Senior requests as follows:

> Capital Senior seeks a mandatory, non-rebuttable adverse-inference instruction directing the jury to find, from Barnhiser's intentional deletion of text messages when she was obligated to preserve them, that each of the 38,182 deleted text message is irrefutable evidence that Barnhiser communicated through that text message with Capital Senior's employees and residents with the intent to solicit them to Maumee Pointe in violation of her post-employment contractual obligations to Capital Senior.

(Doc. 40, PageID. 2907).

I agree with Meridian that this adverse inference instruction goes too way far under the circumstances. I will not go so far as to instruct the jury that each of those messages contained irrefutable solicitations. Nor will I go so far as to instruct the jury that these messages, to the extent they contained solicitations, violated Barnhiser's contractual obligations to Capital Senior. That ultimate issue, after all, is for the jury to decide.

---

[1] **The record being a more than adequate basis to award sanctions to Capital Senior, I need not address the issue of bad faith or lack thereof.**

Instead, the jury should be instructed to infer that at least some of the 38,182 deleted text messages evidenced Barnhiser's efforts to solicit Capital Senior employees and/or residents to Maumee Pointe.

Under Federal Rule of Civil Procedure 37, when a motion is granted, a Court may award a party reasonable expenses incurred in bringing the motion unless the Court finds the objections were substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A). I award Capital Senior the costs it incurred related to the forensic examination of Barnhiser's phone, its attorneys' fees associated with all discovery related to the dispute over Barnhiser's phone, and the attorney fees and costs it incurred in bringing its motion for sanctions.

As Capital Senior correctly states, "had Barnhiser and Meridian acknowledged the full extent of their wrongdoing, Capital Senior would not have had to compel production of the iPhone or forensically examine it." (Doc. 38, PageID. 1358).

Within three weeks of the date of this Order, Capital Senior shall submit a statement of its expenses including the fees and costs associated with the forensic examination and the other fees and costs incurred in responding to the spoliation and preparing and successfully litigating the pending motion.

**CONCLUSION**

I find: (1) that Barnhiser spoliated evidence; and (2) Meridian failed in its obligation to see to it that its employee's spoliation did not occur. Therefore, Capital Senior is entitled to an order holding that Barnhiser and Meridian are jointly and severally liable to pay the amount of sanctions that I ultimately determine is due to Capital Senior.[2]

---

[2] **Capital Senior's motion does not seek to assess the extent to which Barnhiser's sanctionable misconduct may ultimately impair its ability to fully prosecute its claims. It is understandable that Capital Senior did not try to predict what, at this stage, remains unknown and unascertainable.**

Not later than three weeks from the date of this Order, Capital Senior shall provide a statement of the amount of sanctions to which it believes it is entitled to recover under this Order; Defendants shall file their opposition within two weeks thereafter; and Plaintiff shall file its reply within one week thereafter.

It is accordingly hereby ordered that Plaintiff's Motion for Sanctions for Spoliation of Evidence (Doc. 38) be, and the same hereby is, granted as provided herein.

SO ORDERED.

<u>James G. Carr</u>
Sr. U.S. District Judge

---

**That being so, I leave open and express no view on that ultimate question—which may or may not arise later in the course of this litigation.**